NONY WILLIAMS *et al.*

*v.*

THE RITTENHOUSE & EMBREE COMPANY *et al.*

*Opinion filed October 25, 1902.*

1. MECHANICS' LIENS—*party must bring himself within the statute to be entitled to a lien.* The right to a mechanic's lien is a privilege accorded to the particular persons who are within the provisions of the statute, and a party seeking to enjoy the advantages of such statute must bring himself strictly within its terms.

2. SAME—*a mechanic's lien is in derogation of common law.* A mechanic's lien is in derogation of common law, is opposed to common right, and cannot be given except when authorized by the provisions of a statute, strictly construed.

3. SAME—*written contract must fix time for completing work and making payment.* A mechanic's lien does not attach by virtue of section 6 of the Mechanic's Lien act of 1895, where the contract is in writing, unless the time within which the work is to be performed or the materials furnished and the time when payment is to be made are expressly set forth in writing.

4. SAME—*when written contract does not fix time for completing work.*
A written contract fixes no time for completing the work or furnishing materials where the only provisions in those respects are that the contractors shall have the brick walls ready for the roof joists within thirty days from the date of the contract, "and the balance of the work as soon as practicable thereafter."

5. SAME—*words "as soon as practicable" construed.* The words "as soon as practicable," used in a building contract with reference to the time for completing the work, even if the word "practicable" is given the meaning of "possible," cannot be construed to mean as quickly as the work can be done with the best appliances and the utmost facilities and extraordinary diligence.

6. SAME—*time for completing work cannot be imported into a written contract by extrinsic evidence.* If a written building contract fixes no time for the completion of the work, a time for such completion cannot be imported into the writing by proof of extrinsic matters, such as agreements between other parties.

7. SAME—*a verbal contract must provide for payment within one year.* The true construction of section 6 of the Mechanic's Lien act of 1895 with reference to oral contracts is, that if a lien is to be established under such verbal contract, the contract must require that the work be done or material furnished within one year from the date of the contract and that the final payment shall be within such time; and it is not sufficient that the work is actually completed within such year.

*Rittenhouse & Embree Co. v. Barry,* 98 Ill. App. 548, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

BAYLEY & WEBSTER, for appellants.

FRANCIS T. MURPHY, THADDEUS S. ALLEE, JESSE COX, and ATWOOD & PEASE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

One of the appellees, the Rittenhouse & Embree Company, filed in the circuit court of Cook county its bill in chancery to establish and enforce a mechanic's lien on six certain lots abutting on Vincennes avenue, in the city of Chicago, in the sum of $1900.97, for lumber and build-

ing material furnished, as a sub-contractor, by the said
company in the construction of six dwelling houses which
had been erected on said lots.   The bill made Ebenezer
Ryder, William H. Barry and James E. Fellows, owners
of the premises;  the appellee firm of Stevens & Sher-
brook, the original contractors for the carpenter and mill
work;  the firm of C. L. Webster & Son, principal con-
tractors for the stone and brick work of the buildings,
and the appellants, as holders of indebtedness secured
by mortgages on the premises, defendants to the bill,
together with other persons and firms who now have no
interest in this proceeding.   Barry, Fellows and Ryder,
owners of the fee of the premises, suffered default.   An-
swers were filed by the other defendants and replications
filed to the answers.   The firm of C. L. Webster & Son,
defendants to the bill, also filed a cross-bill, in which one
F. B. Pease, to whom, as trustee, said Webster & Son had
assigned their claim, joined, as cross-complainant.   The
cross-bill asked for the establishment of a lien in favor
of said Webster & Son and said Pease, as their trustee.
The cross-bill was answered, replications thereto filed
and the cause referred to a master.   The master reported
the evidence taken, and his conclusions as to matters of
law and fact, together with many objections and excep-
tions taken and preserved by the respective parties.   The
master recommended a decree establishing liens in favor
of the contractors and sub-contractors, and declared the
lien so established to be superior to that of the appel-
lants, as mortgagees.   The chancellor, on a hearing of
the report of the master and the proofs and exhibits,
declined to accept the conclusions reached by the mas-
ter, but found that said contractors, sub-contractors and
material-men aforesaid, "under the law and the evidence
so taken and submitted by the said master in chancery
with and as a part of his report, are not, nor are any or
either of them, entitled to a lien on said premises, or any
part thereof, under and in pursuance of the statute re-

lating to mechanics' liens," and decreed that the original bill and the cross-bill be dismissed for want of equity. The contractors, sub-contractors and material-men aforesaid, prosecuted an appeal to the Appellate Court for the First District, and the decree of the circuit court was reversed by the said Appellate Court and the cause was remanded, with directions to the circuit court to enter a decree establishing liens as prayed in favor of each of such contractors, sub-contractors and material-men. This is an appeal from the judgment of the Appellate Court.

On the 6th day of May, 1896, William H. Barry and James E. Fellows, who had acquired the title to the six lots in question, entered into a verbal contract with the firm of Stevens & Sherbrook to do the carpenter work and furnish the lumber and mill work necessary to build six houses, one on each of said six lots. Stevens & Sherbrook had constructed three houses on other lots for Barry & Fellows, and the six to be constructed under this contract were to be duplicates of the others. The Rittenhouse & Embree Company entered into a verbal contract with Stevens & Sherbrook to furnish the lumber to be used in the construction of the said houses. C. L. Webster & Son entered into a written contract with Barry & Fellows to construct the stone and brick work for the buildings and furnish the material of that character necessary to be used therein.

We think the circuit court correctly decided the liens did not attach under any of these agreements. It may be conceded for the purpose of the disposition of the question as to the right of Stevens & Sherbrook to a lien, that, as claimed by their counsel, it was shown by the testimony they entered into an oral contract with the owners, Barry & Fellows, whereby they agreed to do all carpenter work for the buildings in question and furnish all the material therefor for $6000; that all such material and labor were to be furnished in a reasonable time

within one year from the date of said contract, payment to be made as the work progressed, final payment to be made on completion. It may also be conceded for the purpose of making disposition of the claim of the Rittenhouse & Embree Company for a lien, that, as claimed by the counsel for that company, "the proof shows conclusively that a verbal contract was entered into on May 9, 1896, between Stevens & Sherbrook and Rittenhouse & Embree Company whereby the latter agreed to furnish all the lumber for the improvements. They entered upon the performance of their contract the same day it was made and delivered material, continuing from day to day thereafter to the following August 8, 1896, when the last material was furnished. The understanding between the parties was that they were to receive their pay as the work progressed and final payment on final delivery. Of course, being a sub-contractor of Stevens & Sherbrook, the time for completion and final payment as to the contract of Stevens & Sherbrook would naturally and necessarily control as to the sub-contract for materials with Rittenhouse & Embree Company."

The written contract between Webster & Son and said Barry & Fellows contained the following provisions with reference to the time in which the work was to be performed and the material furnished, viz.:

"Article 6. The contractor shall complete the several portions and the whole of the work embodied in this agreement by and at the time or times hereinafter stated, to-wit: to have the brick walls ready for the roof joists in thirty days from the date hereof, and the balance of the work as soon as practicable thereafter."

Article 7 of the contract provided that if the said Webster & Son should be delayed in the completion of the contract by the default of the owners, architects or any other contractor, or by the action of the elements, the time fixed for the completion of the work should be extended for a period equivalent to that lost by the delay.

As to the time of payment, and the manner thereof, this written contract provided "that the sum to be paid by the owner to the contractor for said work shall be $4800, payable in installments, eighty-five per cent as the work progresses. The final payment shall be made within thirty days after this contract is fulfilled."

The liens, if any attached under these contracts, must have been by virtue of the provisions of an act entitled "An act to revise the law in relation to mechanics' liens," approved and in force June 26, 1895. (Hurd's Stat. 1899, p. 1104.) Section 6 of the act is as follows: "If the work is done or materials are furnished under a verbal contract, no lien shall be had by virtue of this act unless the work shall be done or materials furnished within one year from the date of the contract, and final payment therefor is to be made within such time. If the contract be written, no lien shall be had by virtue of this act, if the time stipulated for the completion of the work or furnishing materials is beyond three years from the date of the contract, or the time of payment beyond one year from the time stipulated for the completion thereof. Nor shall a lien be had under a. written contract where the time of completion or final payment is more than one year from the date of the contract, unless either the work be continual up to the date for such payment, or within thirty days after completion the contractor shall file in the office of the circuit clerk of the county where the improvement is made, a statement under oath, or verified by affidavit, giving the name of the contractor and of the person contracting with him, a description of the property improved, the balance due, and the date for the final payment, which statement shall have the effect and stand in lieu of the claim for lien hereinafter provided for."

In *Freeman* v. *Rinaker*, 185 Ill. 172, we had occasion to construe said section 6 so far as it was applicable to the creation of a lien by a contract in writing. We need not repeat here what was there said. The conclusion reached

was, that no lien would attach by virtue of the act where the work was done or the material furnished under a contract in writing, unless the time within which the work is to be performed and the time when payment therefor is to be made are expressly set forth in the writing. In *Kelley* v. *Northern Trust Co.* 190 Ill. 401, and again in *King* v. *Lamon*, 193 Ill. 537, we re-affirmed and adopted the conclusion announced in *Freeman* v. *Rinaker, supra.* The written contract here involved fixes no time within which the material shall be furnished and the work completed. The provisions of the contract in this respect are, that the contractors shall have the brick walls ready for the roof joists within thirty days from the date of the contract, "and the balance of the work as soon as practicable thereafter." Counsel for the appellees Webster & Son, and for appellee Pease, the trustee of that firm, say that the word "possible" is the synonym of the word "practicable," and therefore the contract may be construed to mean that the work remaining to be done and the material to be furnished after the brick walls are ready for the roof joists shall be performed and furnished "as soon as possible thereafter." They insist that "as soon as possible" does not mean within a reasonable time, and, in effect, contend that "as soon as possible" means as quickly as the work can be done with the best appliances, unlimited facilities and the utmost diligence. Without being understood as conceding this argument has any force, it may be noted that it does not avail to import into the writing the expression of a fixed time for the completion of the work.

Counsel, however, refer to an item of evidence produced as in support of the verbal contract between Stevens & Sherbrook, which they contend shows that the contract between the owners and that firm required the carpenter work and wood work of the buildings should be entirely completed by the first day of September, 1896, and insist the court must take notice of the fact that the

brick work and masonry to be furnished and performed
by Webster & Son must be completed before Stevens &
Sherbrook could complete the carpenter work, and hence
that the written contract must be construed to require
the stone and brick work of the buildings to be completed
prior to September 1, 1896.   Even that argument would
not specify a time.   How long prior to September 1?
Moreover, the words "as soon as practicable" do not and
cannot be construed to mean as quickly as the work can
be done with the best appliances and the utmost facili-
ties and extraordinary diligence.   In *Pope* v. *Filley*, 3 Mc-
Crary, (U. S.) 190, the vendors agreed to ship the vendee
five hundred tons of iron "as soon as possible," and the
court said:  "The meaning of that clause of the contract
is, that these parties were to use all reasonable diligence
to ship as soon as possible.  * * *  This clause did not
make it obligatory upon the plaintiff to do everything
which was possible as a physical act, if such act lay be-
yond what shippers of iron might reasonably be expected
to do.   So far as the obligation of this clause of the con-
tract is concerned, it is sufficient for the jury to find that
the plaintiff diligently made every reasonable effort, in
the usual course of commerce, to effect the prompt ship-
ment of the iron."  The phrase in insurance policies that
notices of loss shall be forwarded "as soon as possible,"
has uniformly, so far as we are aware, been construed to
mean with due diligence under the circumstances of the
case and without unnecessary and unreasonable delay.
(*Knickerbocker Ins. Co.* v. *Gould*, 80 Ill. 388; *Niagara Ins. Co.*
v. *Scammon*, 100 id. 644.)  The word "practicable" and the
word "possible" may, and sometimes do, have the same
meaning.  If here regarded as synonymous, neither could
be construed to require more than the exercise of rea-
sonable diligence in view of all the circumstances which
might attend upon the execution of the work.   It may
be, and often is, possible to do that which it is wholly
impracticable to do.

The proposition that a time for the performance of the work may be imported into the writing by proof of extrinsic matters, such as agreements between other parties, is wholly inadmissible. The written contract specified no time for the completion of the work, and as the only provision of the contract with reference to the time of payment is that such payment should be made within thirty days after the contract should be fulfilled, it likewise failed to specify the time of payment. No lien, therefore, attached against the premises under the written contract made by the appellees Webster & Son.

The claims for liens in favor of Stevens & Sherbrook and the Rittenhouse & Embree Company are based upon verbal contracts. The true construction of said section 6 of the said Lien act is, that if work is done or the material furnished for which a lien is claimed under a verbal contract, the contract must require that the work be done and the material furnished within one year from the date of the contract, and that the money therefor shall be paid within one year. Under contracts in writing, liens may be enforced when the work is to be performed at any time within three years, and the time of payment may be extended, under a written contract, for one year after the completion of the work. The time of the completion of the work and of the payment of the money therefor is equally important, whether the contract be verbal or in writing. The difference is, that a greater length of time may be allowed if the evidence that the parties have so agreed has been reduced to writing. That the parties have agreed and fixed upon a time for the performance of the work and payment of the money therefor is essential to the creation of a lien, whether their agreements be evidenced by writing or be established by parol proof. If the agreement be verbal, it must appear that the time of the completion of the work and for the payment of the money was fixed and settled upon by the parties, otherwise the statute does not give the lien. The

right to a lien, here sought to be availed of, is a privilege accorded only to the particular persons who are within the provisions of the act, and for that reason, as we have frequently said, a party seeking to enjoy the advantages of the statute must bring himself strictly within the terms of the statute.

It was proven the material for the houses in question was furnished and the work of constructing them was performed within one year, and it is urged the law, in the absence of any express agreement as to the time of payment, will imply an agreement to pay upon completion of the work, and it is thought a lien may be predicated upon this implication of the law. Cases adjudicated in this court are cited as in support of this contention. The cases referred to were governed by statutes then in force which contained provisions authorizing the establishment of a lien upon implied or partly implied and partly expressed contracts. Those enactments were repealed by the act of 1895, and the provisions of the former act, upon which such decisions were based, were omitted from the act of 1895, and hence the statutory authority which justified the declaration of a lien in the cases cited is now wanting. The lien is in derogation of the common law, is opposed to common right, and cannot be given except when authorized by the provisions of a statute strictly construed. *Freeman* v. *Rinaker, supra.*

It is contended that the appellants, in objection No. 1 to the master's report and in the presentation of the case in the Appellate Court, insisted that it appeared from the evidence that the verbal contract entered into by Stevens & Sherbrook required them to furnish the material and perform the work by the first day of September, 1896, and it is insisted that appellants should not be permitted to shift their position in this court and insist that the agreements with Stevens & Sherbrook did not specify or fix any time for the completion of the work or in which the material should be furnished or the money therefor

paid.    The pleading filed on behalf of Stevens & Sher-
brook for a lien averred that the date of completion of
the work and time of final payment was not definitely
fixed by their contract, and their position was, that the
work was to be done within a year and was completed
within that time, and that the promise was to pay when
the building was completed.    When all the objections
presented to the report of the master are considered, we
think the position of the appellants in the circuit court
was, that if the evidence showed the contract with Ste-
vens & Sherbrook fixed any time for the completion of
the work it was September 1, 1896, and that the notice
for lien was not given within four months of that date;
but it was contended also that the contract, as stated
in the pleading, did not authorize a lien, and that the
evidence with relation to the time of completion of the
work should be rejected as a departure from the plead-
ing and as an attempt to place the right to a lien on a
new ground.    In the Appellate Court the appellants
sought to uphold the decree of the circuit court on both
grounds, the latter of which is also urged in this court
for a reversal of the judgment of the Appellate Court.
In this court, counsel for Stevens & Sherbrook contend
the evidence showed that no date for the completion of
the work was fixed by the contract, and that final pay-
ment was not fixed by the terms of the contract other-
wise than that it should be made when the work was
completed.    Their pleading so averred, and their position
in all the courts has been that the pleading and the proof
entitled them to a lien, and the position of the appellants
has been adverse to that view.    The pleadings and the
proof, as we have seen, are not sufficient to establish the
lien, and such must be the judgment of this court.

The judgment of the Appellate Court is reversed and
the decree of the circuit court is affirmed.

*Judgment reversed.*